Bryan S. Arce, Esq.
Attorney ID #: 025882009
Phillips & Associates, PLLC
*Attorneys for Plaintiff*
45 Broadway, Suite 610
New York, NY 10006
P: (212) 248-7431
F: (212) 901-2107
barce@tpglaws.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

-------------------------------------------------------------------X     Case No.:

JAY EBANKS,

                        Plaintiff,

            -against-                                                **COMPLAINT**

ROBERT BOSCH NORTH AMERICA CORPORATION,                      Plaintiff Demands a
individually and d/b/a BOSCH, ROBERT BOSCH                    Trial by Jury
PACKAGING TECHNOLOGY, INC., individually and
d/b/a BOSCH, and PHIL METZGER, individually,

                        Defendants.

-------------------------------------------------------------------X

Plaintiff, by and through his attorneys, Phillips and Associates, PLLC, hereby complains of the

Defendants, upon information and belief as follows:

## NATURE OF THE CASE

1.  Plaintiff complains pursuant to 42 U.S.C. §1981, and to remedy violations of the laws of the

    New Jersey Law Against Discrimination and the New Jersey Common Law, based upon the

    supplemental jurisdiction of this Court pursuant to *Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C.

    §1367, seeking damages to redress the injuries Plaintiff has suffered as a result of being

    harassed and discriminated against by his employer on the basis of his race, together with

creating a hostile work environment, retaliation, wrongful termination and/or constructive discharge.

## JURISDICTION AND VENUE

2. The Court has jurisdiction pursuant to 42 U.S.C. §1981; 28 U.S.C. §1331, §1343, and supplemental jurisdiction thereto.

3. This action involves a Question of Federal Law.

4. Venue is proper in this district based upon the fact that a substantial part of the events and omissions giving rise to the claim occurred within the District of New Jersey. 28 U.S.C. §1391(b).

## PARTIES

5. Plaintiff is an African American male resident of the State of New Jersey, County of Passaic.

6. At all times material, Defendant ROBERT BOSCH NORTH AMERICA CORPORATION, individually and d/b/a BOSCH (hereinafter also referred to as "BOSCH NORTH AMERICA") was and is a foreign business corporation duly existing under the laws of the State of Delaware.

7. At all times material, Defendant BOSCH NORTH AMERICA was and is a foreign business corporation not authorized to do business in the State of New Jersey.

8. At all times material, Defendant BOSCH NORTH AMERICA was and is a foreign business corporation which does conduct business in the State of New Jersey.

9. At all times material, Defendant ROBERT BOSCH PACKAGING TECHNOLOGY INC., individually and d/b/a "BOSCH" (hereinafter also referred to as "BOSCH PACKAGING") was and is a foreign business corporation duly existing under the laws of the State of Minnesota.

10. At all times material, Defendant BOSCH PACKAGING was and is a foreign business corporation authorized to do business in the State of New Jersey.

11. At all times material, Defendant BOSCH PACKAGING was and is a foreign business corporation which does conduct business in the state of New Jersey.

12. At all times material, Defendant BOSCH NORTH AMERICA was and is the parent company of Defendant BOSCH PACKAGING.

13. At all times material, Defendant BOSCH NORTH AMERICA and Defendant BOSCH PACKAGING were Plaintiff's joint employers.

14. Defendant BOSCH NORTH AMERICA and Defendant BOSCH PACKAGING are hereinafter also referred to as "Defendant BOSCH."

15. At all times material, Defendant PHIL METZGER (hereinafter also referred to as "METZGER") was and is a "Production Supervisor" at Defendant BOSCH's 90 Boroline Road, Allendale, NJ 07401 location.

16. At all times material, Defendant METZGER was Plaintiff's supervisor and/or had supervisory authority over Plaintiff.

17. Defendant BOSCH and Defendant METZGER are also herein collectively referred to as "Defendants."

18. At all times material, Plaintiff was an employee of Defendants.

## MATERIAL FACTS

19. On or about June 20, 2016, Plaintiff began working for Defendant BOSCH as a temporary employee.

20. On or about August 9, 2016, Defendant BOSCH hired Plaintiff as a permanent "Production Assistant" at its 90 Boroline Road, Allendale, NJ 07401 location.

21. Throughout Plaintiff's employment, he was the only African American employee, out of 26 employees, at Defendant BOSCH's 90 Boroline Road, Allendale, NJ 07401 location.

22. Shortly after Plaintiff became a permanent employee, Defendant METZGER began to harass and discriminate Plaintiff on the basis of his race and/or color.

23. By way of example, on or about August 10, 2016, Defendant METZGER entered Defendants' Production Room, walked over to Plaintiff's desk and said, **"You're a boy, you're nothing more than just a boy."**

24. As an African American adult male, Plaintiff was offended by Defendant METZGER's use of "Boy" because of its traditional and stereotypical use by Caucasians as a way to dismiss and demean African-American men.

25. On or about August 18, 2016, Plaintiff asked Defendant METZGER for help locating a power tool in Defendant BOSCH's Service Department.  Defendant METZGER instructed Plaintiff to follow him.  When the two of them reached the drawer in which the tool was located, Defendant METZGER reached in and **aggressively swung the power tool out towards Plaintiff in an attempt to strike him.**

26. Over the course of Plaintiff's employment, he never saw Defendant METZGER swing a power tool at any other of Defendant BOSCH's employees.

27. In or around September 2016, Plaintiff attempted to speak with Defendant METZGER about what Plaintiff reasonably believed to be racial hostility towards him.  As Plaintiff began to speak, **Defendant METZGER simply walked away.**

28. On or about October 3, 2016, Defendant BOSCH's "General Manager," Sean Willis, asked Plaintiff "Why did you take off on Friday?  Did it have anything to do with [Defendant METZGER's] actions?"  Plaintiff replied that it did and that "Just the sight of me can trigger

[Defendant METZGER]."  Plaintiff also complained to Mr. Willis about the incident during which Defendant METZGER aggressively swung a power tool towards him.

29. Despite Plaintiff's complaint to Mr. Willis, Defendant METZGER's discrimination continued.

30. By way of example, Defendant METZGER regularly belittled Plaintiff and spoke to him in a condescending tone.  Defendant METZGER did not speak to any of the non-African American employees in this way.

31. In fact, three Caucasian employees were hired after Plaintiff and assigned to his department. Nevertheless, despite having less experience than Plaintiff, Defendant METZGER did not speak to or treat these Caucasian employees the same way he treated Plaintiff.

32. In or around the first week of February 2017, Plaintiff received a performance review from Mr. Willis and Defendants' "Production Team Manager," Jeff Miklush.   During the performance review, Plaintiff told them **"I don't know if [Defendant METZGER] had a bad experience with someone that looks like me (African-American)."**

33. Despite Plaintiff's complaint, Defendant METZGER's discrimination continued.

34. Defendants failed to stop Defendant METZGER's discrimination.

35. On or about March 27, 2017, Plaintiff submitted a written complaint to Defendant BOSCH's "Human Resources Representative," Patricia Grigsby, Mr. Willis, and Mr. Miklush regarding Defendant METZGER's discrimination.   In the complaint, Plaintiff wrote, **"Out of the 26 employees, I am the only African American"** and **"Since I started, three new employees came on board who work in the same department as Phil and I.  All three employees are of Caucasian race. Phil never once exposed any of the three fellow coworkers to his other side."**

36. Despite Plaintiff's written complaint, Defendant BOSCH failed to prevent Defendant METZGER's harassment and discrimination.

37. On or about April 20, 2017, Plaintiff and Defendant METZGER were walking towards each other in one of Defendant BOSCH's hallways.  While deliberately blocking Plaintiff's path, Defendant METZGER purposefully bumped into Plaintiff and yelled, **"<u>Fucking Nigger!</u>"** **Defendant METZGER then lunged at Plaintiff's neck.**  Luckily, Plaintiff was able to swat Defendant METZGER's hand away before he assaulted him.

38. Before Plaintiff could report him to Defendant BOSCH's HR, Defendant METZGER falsely reported Plaintiff as the aggressor in the altercation.

39. Later that day, Defendant BOSCH's HR representative told Plaintiff that an investigation would be conducted and he would be contacted with the outcome.  Defendant BOSCH's HR also told Plaintiff to go home for the day and they would contact him when the investigation concluded.

40. On or about April 21, 2017, the HR representative called Plaintiff and asked him to come to the office so they could discuss what happened with Defendant METZGER.  Plaintiff agreed to attend this meeting.

41. During this meeting, Plaintiff again complained about Defendant METZGER's racial animosity and use of the term "Nigger."

42. On or about April 24, 2017, Plaintiff had a meeting with Defendant BOSCH's HR representative, Mr. Willis, Mr. Miklush, and Defendant METZGER.  During this meeting, in retaliation for Plaintiff's complaints of racial discrimination and harassment, Plaintiff was told to either get along with Defendant METZGER or he could receive a severance of 4-weeks' pay.  Plaintiff explained that he was not interested in Defendants' severance offer and that he

was going to find it very difficult to work with Defendant METZGER.  Plaintiff explained again that Defendant METZGER **called him a nigger and if they had intervened earlier this could have been avoided.**  Nevertheless, Defendants told Plaintiff to return to work the next day.

43. Plaintiff felt as if his complaints were falling on deaf ears and that Defendants wanted to sweep his complaints under the rug.

44. The next day, on or about April 25, 2017, Plaintiff reported to work and was terminated because he refused to sign a paper which instructed both he and Defendant METZGER to get along.

45. Plaintiff refused to sign the paper because he believed it to be futile; Defendants had previously failed to remedy the hostile work environment of which he had complained and to which he was being subjected.

46. On or about April 25, 2017, Defendants terminated Plaintiff because of his race and/or color.

47. On or about April 25, 2017, Defendants terminated Plaintiff because of his opposition to Defendants' unlawful employment practices.

48. Defendants would not have discriminated against Plaintiff but for his race and/or color.

49. Defendants would not have harassed Plaintiff but for his race and/or color.

50. As a result of Defendants' actions, Plaintiff felt, and continues to feel, extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

51. As a result of Defendants' discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer severe emotional distress and physical ailments.

52. As a result of the acts and conduct complained of herein, Plaintiff has suffered, and will continue to suffer, the future loss of income, the loss of salary, bonuses, benefits and other

compensation which such employment entails, loss of enjoyment of life, and other non-pecuniary losses.

53. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages as against all Defendants, jointly and severally.

## AS A FIRST CAUSE OF ACTION
## UNDER FEDERAL LAW
## 42 U.S.C. Section 1981

54. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

55. 42 U.S.C. Section 1981 states in relevant part as follows:

   a. Statement of equal rights. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind and to no other.

   b. "Make and enforce contracts" defined. For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

56. Plaintiff, a member of the African American race, was discriminated against because of his race as provided under 42 U.S.C. Section 1981 and has suffered damages as set forth herein, along with retaliation.

## AS A SECOND CAUSE OF ACTION
## UNDER STATE LAW
## DISCRIMINATION

57. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

58. New Jersey's Law against Discrimination Section 10:5 – 12(a) sets forth in pertinent part as follows: "It shall be an unlawful employment practice, or as the case may be, an unlawful discrimination: (a) For any employer, because of the … race … to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

59. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of his race and/or color.

## AS A THIRD CAUSE OF ACTION
## UNDER NEW JERSEY STATE LAW
## RETALIATION

60. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

61. New Jersey's Law against Discrimination Section 10:5-12(d) sets forth in pertinent part as follows: "It shall be an unlawful discriminatory practice, or, as the case may be, an unlawful discrimination: d) For any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, any right granted or protected by this act."

62. Defendants engaged in an unlawful employment practice by retaliating, and otherwise discriminating against the Plaintiff, including, but not limited to terminating Plaintiff's employment.

63. Defendants violated all other applicable sections of N.J. Stat. §10:5-12(d) et. seq.

## AS A FOURTH CAUSE OF ACTION
## UNDER NEW JERSEY STATE LAW
## <u>AIDING AND ABETTING</u>

64. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

65. New Jersey's Law against Discrimination Section 10:5-12(e) sets forth in pertinent part as follows: "Unlawful employment practices, discrimination.  It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination: e) For any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or attempt to do so."

66. Defendants engaged in an unlawful discriminatory practice by aiding and abetting the discrimination against the Plaintiff as set forth herein.

67. Defendants violated all other applicable sections of N.J. Stat. §10:5-12(e) et. Seq.

68. As such, Plaintiff has been damaged as set forth herein.

## AS A FIFTH CAUSE OF ACTION
## UNDER THE NEW JERSEY COMMON LAW
## <u>WRONGFUL DISCHARGE</u>

69. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

70. Pursuant to *Pierce v. Ortho Pharm. Corp.*, 84 N.J. 58, 72 (N.J. 1980), "an employee has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy," including but not limited to "legislation; administrative rules, regulations or decisions; and judicial decisions."

71. Defendants' acts and omissions constitute a wrongful discharge in violation of public policy.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A.  Declaring that the Defendants engaged in an unlawful employment practice prohibited by 42 U.S.C. §1981, the New Jersey Law against Discrimination, and the New Jersey Common Law, and that the Defendants harassed and discriminated Plaintiff on the basis of his race and/or color, together with creating a hostile work environment, retaliation, wrongful termination and/or constructive discharge;

B.  Awarding damages to the Plaintiff, for all lost wages and benefits, past and future, back pay and front pay and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practice;

C.  Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation;

D.  Awarding Plaintiff punitive damages;

E.  Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action;

F.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE,** Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, Punitive Damages, attorneys` fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: New York, New York
        September 1, 2017

PHILLIPS & ASSOCIATES, PLLC
*Attorneys for Plaintiff*

By: _____
        Bryan S. Arce, Esq.
        Attorney ID #: 025882009
        45 Broadway, Suite 610
        New York, NY 10006
        (212) 248-7431